UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
J. FREDERICK MOTZ
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
(410) 962-2698 FAX

June 10, 2005

In Re: Microsoft Corp. Antitrust Litigation
MDL 1332

Novell, Inc. v. Microsoft Corp.
Civil No. JFM-05-1087

Dear Counsel:

As I mentioned at the close of the hearing held on June 7, 2005, there is a series of motions pending in another proceeding in which I am involved to which I will have to turn my attention in the coming weeks. I expressed to you my concern that as a result, it might take me more time than I would like to rule upon Microsoft's motion to dismiss in this case. After the hearing, however, I concluded that close and difficult though the issues are, I am prepared to decide them now, particularly while your excellent arguments are still fresh in my mind.

It is neither in your interest nor in the public interest to delay resolution of your dispute any longer. Therefore, instead of postponing my rulings until my schedule would permit me to write a more extensive opinion, I have decided to issue my rulings now, setting forth my reasoning in this short memorandum to you. I hope you understand that the form and nature of the opinion does not mean that I have not considered the questions presented as thoroughly and carefully as I can. As I have previously done in these MDL proceedings, I am simply following my own adage of "writing for the parties, not for the ages."

Microsoft's motion is denied as to Counts I and VI but granted as to Counts II, III, IV, and V.

<u>Counts I and VI</u>

In Count I Novell alleges that Microsoft unlawfully "obtained and maintained its monopoly power in the Intel-compatible operating systems market by engaging in anticompetitive conduct" and that as a result Novell was damaged, specifically through lost sales of "office productivity applications" (including WordPerfect, a word processing program, and Quattro Pro, a spreadsheet program). Microsoft acknowledges that the claim asserted in Count I is not time-barred because the focus of the government case against Microsoft (during the pendency of which limitations of private rights of action were tolled under 15 U.S.C. § 16(i)) was upon Microsoft's monopoly in the operating system market.

Count VI is based upon Microsoft's exclusionary agreements with OEMs, which allegedly were in unreasonable restraint of trade. Although Microsoft does not expressly concede the point, such agreements also were a subject of the government case. Thus, limitations has been tolled as to the claim asserted in Count VI.

In regard to Count I Microsoft makes two contentions, neither of which is meritorious. First, it argues that Novell no longer owns the claim asserted in that count because it transferred the claim to Caldera in connection with the sale of the DOS operating system, related technology, and claims relating "directly or indirectly" to it. The fallacy in this argument is that the claim asserted in Count I, while arising from Microsoft's monopoly in the operating system market, is for damage not to DOS or any other operating system but for damage to applications software. It is a far stretch to infer (and Microsoft has presented nothing to establish) that simply because DOS competed in the operating system market, such a claim was either a "direct" or "indirect" claim intended to be transferred from Novell to Caldera. Of course, Novell did also have claims against Microsoft for damage caused to DOS and related technology, but these claims (which were settled after Caldera sued Microsoft) are not part of the present action.

Microsoft next argues that Novell lacks antitrust standing as to Count I because the office productivity applications alleged to have been damaged did not compete in the operating system market. According to Microsoft, there is a black-letter rule that only competitors or consumers in a relevant market have standing to sue for harm caused by anti-competitive behavior in that market. Microsoft overstates the proposition. Certainly, competitors and consumers in a given market "are favored plaintiffs," and, just as certainly, "the list of those presumptively disfavored is far longer." *SAS of Puerto Rico, Inc. v. Puerto Rico Tel. Co.*, 48 F.3d 39, 45 (1st Cir. 1995). *See also White v. Rockingham Radiologists, Ltd.*, 820 F.2d 98, 104 (4th Cir. 1987); *Lucas v. Bechtel Corp.*, 800 F.2d 839, 845-46 (9th Cir. 1986). However, the Supreme Court has not established a litmus test for antitrust standing based upon a plaintiff's status. Rather, in *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519 (1983), the Court - while pointing out that the plaintiff whom it found not to have antitrust standing "was neither a consumer nor a competitor in the market in which trade was restrained," *id*. at 539 - did not simply rely upon that fact but instead articulated a series of factors to be considered in deciding the standing question. *Id*. at 537-45.

In the present case the gravamen of the claim asserted in Count I is that Microsoft specifically targeted Novell for the purpose of maintaining its monopoly in the operating system market. According to Novell, WordPerfect and Quattro Pro, its popular office productivity applications, posed a threat to Microsoft's operating system monopoly because Novell had engineered them to exploit Novell's existing cross-platform technologies, such as OpenDoc and AppWare. Moreover, because these applications were being developed to run independently of any operating system, particularly Windows, and because the consumer demand for them was great, Microsoft saw the need to attack them. In support of this view, Novell, citing an internal Microsoft email, contends that "Microsoft recognized that it had to control the office productivity applications market to fend off that threat to its operating systems monopoly." The Microsoft email stated as follows:

> If we own the key 'franchises' built on top of the operating system, we dramatically widen the "moat" that protects the operating system business. . . .We hope to make a lot of money off these franchises, but even more important is that they should protect our Windows royalty per PC. . . .And success in those businesses will help increase the opportunity for future pricing discretion.

E-mail from Jeff Raikes, Microsoft, to Warren Buffet (Aug. 17, 1997).

Novell also alleges that it was a company of particular concern to Microsoft. Paragraph 7 of the Complaint avers:

> Bill Gates, Microsoft's Chairman and Chief Executive Officer, targeted Novell's applications by name in documents recording Microsoft's anticompetitive schemes, in which he explained that the integration of browsing functions into Windows, coupled with Microsoft's refusal to publish certain of these functions, was a primary strategy for excluding Novell's applications from the markets. He candidly admitted that Microsoft's own products could not compete without the benefit of these anticompetitive acts.

Against this background, it is clear to me that Novell meets the various parts of the multi-factored test established by *Associated General Contractors* for antitrust standing. First, there is a direct causal connection between the anticompetitive acts Microsoft allegedly took against Novell's office productivity applications for the purpose of maintaining its operating systems monopoly and the damage claimed in Count I. Second, Microsoft allegedly targeted Novell specifically because it perceived Novell as an innovator in the industry. This targeting demonstrates that, at the least, Microsoft perceived Novell to be a competitor. *See Reazin v. Blue Cross & Blue Shield of Kan., Inc.*, 899 F.2d 951, 962-63 (10th Cir. 1990). Third, destruction of a competitor's product for the purpose of maintaining a monopoly self-evidently is the type of harm for which the antitrust laws are intended to provide redress. Fourth, Novell's claim is direct and straightforward. Fifth, although there were other victims of other anticompetitive acts committed by Microsoft for the purpose of maintaining its monopoly in the operating system market, Novell is the only victim who could bring suit for the acts taken by Microsoft in regard to WordPerfect and Quattro Pro - acts which ultimately had an enormous impact upon the shape of the applications software market.[1] Finally, no problem of speculative damages or complex apportionment of damages is presented because Novell is the only person with a

---

[1] It would seem that an implication of Microsoft's contention that Novell lacks antitrust standing as to the claim asserted in Count I is that Sun and Netscape also lacked antitrust standing to the extent that they were not direct competitors in the operating system market, i.e., owners of alternative operating systems, but rather developers of middleware products that threatened to render Microsoft's operating system obsolete. Even if that is not so, however, I am satisfied that for the reasons I have stated, Novell may (just as Netscape and Sun did) assert antitrust claims for harm allegedly caused to its non-operating system products as a result of Microsoft's anticompetitive behavior designed to protect its Windows monopoly.

claim for the damages it allegedly suffered in connection with WordPerfect and Quattro Pro between 1994 and 1996 when it sold those products to Corel.

    2. Counts II, III, IV, and V

Under 15 U.S.C. § 16(i) the limitations period is tolled for "every private right of action . . . based in whole or in part on any matter complained of" in an antitrust action brought by the United States. For the reasons I have just stated, I find that the claims asserted in Counts I and VI are tolled under this section. As Microsoft contends, however, the mere fact that limitations are tolled as to two counts in a complaint is not sufficient to toll all other counts in the complaint. Section 16(i) refers not to "complaints" but to "right[s] of action," and self-evidently a party cannot be permitted to circumvent the purpose of the statute by simply joining tolled and untolled claims in the same complaint.

The broad principles governing the tolling issue may be briefly stated. The governing test is whether the matters complained of in the private action "bear a real relation" to a matter complained of in the government suit. *Leh v. Gen. Petroleum Corp.*, 382 U.S. 54, 59 (1965). "The private plaintiff is not required to allege that the same means were used to achieve the same objectives of the same conspiracies by the same defendants," *id*. at 59, but simply must allege "a significant, although incomplete, overlap of subject matter" to toll the statute, "even as to the differences." *Morton's Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 830 (11th Cir. 1999). "In general, consideration of the applicability of . . . [section 16(i)] must be limited to a comparison of the two complaints on their face." *Leh*, 382 U.S. at 65; *Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 331 (1978).[2] Section 16(i) is not to be given a "niggardly construction" and must be "read in light of Congress' belief that private antitrust litigation is one of the surest weapons for effective enforcement of the antitrust laws.'" *Leh*, 382 U.S. at 59 (quoting *Minn. Mining & Mfg. Co. v. N.J. Wood Finishing Co.*, 381 U.S. 311, 318 (1965)).

In its complaint in this action, Novell refers frequently to allegations and findings made in the government case against Microsoft. These reference are incorporated by reference into counts II through V. Those counts, however, assert claims for monopolization and attempted monopolization in

---

[2] As Novell notes, several courts have glimpsed at the record in the government suit in order to evaluate the comparability of the government and private actions. *See, e.g., Morton's Market*, 198 F.3d at 830-32. That approach, however, does not provide any greater support for Novell than does a simple comparison of its complaint and the complaint in the United States' action against Microsoft. The record in the government suit confirms that while an occasional expert may have referred to abuses that occurred in related software markets, those references did not result in any charge of monopolization or attempted monopolization in the office productivity applications market. Indeed, the greatest difference between the complaint in the government action and the ultimate resolution of the case was that whereas the complaint alleged anticompetitive behavior both in the operating system market and in a browser market, the Court of Appeals ultimately found that the evidence did not substantiate the existence of the latter market. *United States v. Microsoft*, 253 F.3d 34, 81-81 (D.C. Cir. 2001).

the word processing and spreadsheet applications markets: claims that were never asserted by the government. While there was a single conclusory averment in the government's complaint that Microsoft engaged in anticompetitive activities both to protect its operating system monopoly and "to extend . . . [that] monopoly into other software markets," Gvt. Compl., at ¶ 5, the only markets defined and focused upon in the government complaint were the operating system and browser markets. Word processing and spreadsheet programs are specifically mentioned only once in the government complaint, and only in the section describing the operating system market and only as applications that are "control[led]" and "direct[ed]" by operating systems. *Id.* at ¶ 54.

Novell accepts, as of course it must, that operating systems and office productivity applications are distinct products and are in separate markets. It also accepts as "unremarkable" the bright-line rule stated by Professor Areeda that limitations are not tolled when "the government and subsequent private suits . . . arose in distinct markets." 2 Philip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 321a, at 241 (2d ed. 2000). That proposition is supported by such cases as *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 781 F. Supp. 481 (C.D. Cal. 1991), and *Charley's Tour and Transportation, Inc. v. Interisland Resorts, Ltd.*, 618 F. Supp. 84 (D. Haw. 1985), which held, respectively, that differences between geographic and product markets in the government suits and private actions prevented tolling under Section 16(i). Novell argues, however, that because the operating system and applications markets are closely, indeed symbiotically related, this bright-line rule should not apply. *Cf. In re Arizona Dairy Prods. Litig.*, No. CIV 74-569A (D. Ariz. Nov. 5, 1984)(finding claim for private action for price-fixing conspiracy in retail milk market tolled based on government suit for price-fixing conspiracy in wholesale milk market); *In re Antibiotic Antitrust Actions*, 333 F. Supp. 317, 320-21 (S.D.N.Y. 1971)(finding claim for damage suffered in a foreign market for agricultural consumption tolled by government suit for conduct in domestic market relating to human consumption). I am not persuaded. The nature of the relationship between the markets is important to an understanding of the dynamics of the industry, and it is central to my earlier holding that Novell has antitrust standing for harm allegedly caused to WordPerfect and Quattro Pro by Microsoft's maintenance of its Windows monopoly. However, the government case focused solely upon the operating system market (and an asserted browser market, ultimately found by the Court of Appeals to be unsubstantiated by the evidence), and Novell has provided no adequate explanation for not applying the bright-line rule recited by Professor Areeda in this case.

Undoubtedly, if the government had pursued additional charges of monopolization and attempted monopolization in the word processing and spreadsheet markets, there would have been some overlap in evidence concerning the conduct in which Microsoft engaged. However, the government deliberately chose not to lodge any such charges,[3] and in my judgment the existence of such a potential overlap does

---

[3]That such a charge could have been asserted certainly was not unknown. State Attorney Generals originally included a claim for harm for a market for office productivity applications in the complaint they filed. (*See* Complaint filed in *New York v. Microsoft Corp.* ¶¶ 88-95, 98, 117-19, No. 98-1233 (D.D.C. filed May 18, 1998)). Of course, the filing of this claim did not toll limitations because section 16(i) applies only to actions brought by the United States. In any event, within two months the Attorney Generals abandoned that claim when filing an amended complaint. (*See* First

not justify tolling under Section 16(i). While Section 16(i) properly serves the purpose of permitting private plaintiffs to wait to bring private claims encompassed within a government enforcement action until that action has come to an end, it should not be construed to permit private plaintiffs to sit on their rights and assert claims so much broader than those asserted by the government that they open entirely new vistas of litigation. If Novell wanted to assert claims for monopolization and attempted monopolization in the word processing and spreadsheet markets, it should have done so long ago. Its inaction entitles Microsoft to the comfort of repose. *Cf. Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 334 (1978)(citing *Dungan v. Morgan Drive-Away, Inc.*, 570 F.2d 867, 869 (1978) for the proposition that the limitations statute is one of "repose").

   Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

              Very truly yours,

              /s/

              J. Frederick Motz
              United States District Judge

---

Amended Complaint filed in *New York v. Microsoft Corp.*, No. 98-1233 (D.D.C. filed July 17, 1998)).